**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSEPH L. BERRY,**

     **Petitioner**

  v.

**JENNY HILDEBRAND, Warden
London Correctional Institution,**

     **Respondent.**

Case No. **2:21-cv-928**
JUDGE **MICHAEL H. WATSON**
Magistrate Judge **Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Petitioner Joseph L. Berry, represented by counsel, has filed a habeas corpus petition under 28 U.S.C. § 2254, praying that his sentence be vacated (Petition, ECF No. 1.) The Respondent Warden has filed the State Court Record (ECF No. 8) and Return of Writ (ECF No. 9), and Petitioner has filed a Traverse (ECF No. 16.) The case is before the undersigned pursuant to 28 U.S.C. § 636(b) and General Order 22-05 regarding assignments and references to Magistrate Judges. For the reasons set forth below, it is **RECOMMENDED** that the Petition be **DENIED** and the action **DISMISSED WITH PREJUDICE**.

**I.     Factual Background and Procedural History**

The underlying facts are set forth in *State v. Berry*, 10th Dist. Franklin No. 18AP-9, 2019-Ohio-3902 (Sept. 26, 2019), and are not in dispute:

> {¶ 2} On October 12, 2008, Marshaun Gray was killed at Club Paradise when he was shot in the back of the head. On December 1, 2015, Berry was indicted for aggravated murder, in violation of R.C. 2903.01(A), and murder, in violation of R.C. 2903.02(A), for the shooting death of Gray. Each charge included a firearm specification under R.C. 2941.145(A).
>
> {¶ 3} A few days after the shooting, the Columbus Division of Police presented Kevina Gray, the mother of one of Gray's children, with a photographic lineup as

part of the investigation of Gray's death. During that procedure, Kevina identified Berry as Gray's killer. On September 22, 2016, Berry filed a motion to suppress Kevina's identification of him as the shooter during the photographic lineup procedure. The evidence at the suppression hearing indicated that Columbus Police Detectives Jay Fulton and Pat Dorn presented Kevina with a six-person headshot photo array, featuring similarly looking individuals. The detectives told her no details about Gray's murder or suspects. Before seeing the photo array, Kevina told Detectives Fulton and Dorn that she had heard rumors that Gray's murder was in retaliation for Gray and his brother assaulting Berry a few months earlier. In reviewing the photo array, Kevina initially identified one person in the photo array as being at Club Paradise during the shooting. After she made this identification, Detective Dorn said the picture was of Berry. Once Detective Dorn stated this, Kevina then wrote the following under the picture of Berry: "From putting a name with this face and from his built [sic] and his hieght [sic] this is the man who killed Marshaun Gray. 100% sure." (State's Ex. A.) The trial court denied the suppression motion at the conclusion of the hearing.

{¶ 4} The matter proceeded to trial in October 2017. During voir dire, the state used a peremptory strike to dismiss the only male African-American juror on the panel, prospective juror Lawson. Berry objected to Lawson's dismissal and raised a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court overruled the challenge, and Lawson was dismissed from the jury. The state then used a peremptory strike to dismiss a prospective alternate juror, Scott. Berry objected to Scott's dismissal, again raising a *Batson* challenge. The trial court overruled the challenge to Scott's dismissal.

{¶ 5} In support of its case against Berry, the state called eight witnesses to testify, including Kevina and Akilah Smith. Both Kevina and Smith testified that they witnessed Berry shoot Gray at Club Paradise on October 12, 2008. Kevina testified as follows. When she and Smith arrived at the club the night of the shooting, Kevina keyed the name of her son into Gray's car because of his parental absenteeism. Once inside, Kevina argued with Gray but then resolved the disagreement. Soon thereafter, Kevina saw a man walk up and shoot Gray. Kevina identified that man as Berry. Kevina saw the side of Berry's face before the shooting and described him as wearing a white button-down shirt with a blue stripe. Once Berry shot Gray, he tucked the gun away and ran out of the club. Kevina knew Berry prior to the shooting because the two had gone to school together. She did not hang out with him, but she was familiar with him. Kevina acknowledged that she did not immediately disclose the identity of the shooter to police. However, when she was presented with the photo array a couple days after the shooting, she identified Berry as the shooter based on her independent recollection of that night. Approximately one year after the shooting, Kevina saw Berry at a bar. Berry talked with Kevina and apologized for shooting Gray.

{¶ 6} Smith testified as follows. When she and Kevina arrived at Club Paradise on

2

the night of the shooting they noticed [Marshaun] Gray's vehicle was parked outside. They entered the club and saw Gray and his brother. At some point, there was a commotion amongst a group of girls. Those girls were escorted out of the club. Smith then saw someone come around a corner. Kevina lunged at Smith, pulling her down. The person who came around the corner was wearing a shirt with a dark blue or green stripe on the sleeve and was carrying a gun. Smith saw his face. But as she fell, she could only see his shirt sleeve and gun. She heard a boom and crawled around the corner. Smith also testified that "I really didn't see his face. I didn't see who walked up and actually pulled the trigger. I just seen his shirt. But it was the same shirt that came around the corner." (Oct. 25, 2017 Tr. at 46.) She further testified that "I didn't know who [Berry] was at the time. He came around the corner, but after the incident when I seen the [Facebook] pictures and stuff, then I knew it was him." (Oct. 25, 2017 Tr. at 42.) Upon realizing Gray had been shot, Smith and Kevina returned and stayed by him until police arrived. Smith identified Berry in the courtroom as the man who she saw come around the corner and shoot Gray.

{¶ 7} The state also presented the testimony of the first-responder officers, the crime scene detective, the chief deputy coroner, and a certified criminal gang investigator. Berry did not call any witnesses and rested without presenting any evidence.

{¶ 8} Based on the evidence presented at trial, the jury found Berry guilty on both counts. The trial court sentenced Berry to life in prison without the possibility of parole on the aggravated murder count, plus a mandatory three-year period of incarceration on the firearm specification. For the purpose of sentencing, the murder count was merged into the aggravated murder count.

*Berry*, 2019-Ohio-3902.

Petitioner, represented by counsel, filed a direct appeal with the Tenth District Court of Appeals, raising the following Assignments of Error:

(1) The trial court erred in excusing an African-American juror after a *Batson* challenge without doing the requisite analysis;

(2) The trial court committed reversible error by refusing to suppress the out-of-court and in-court identifications of Petitioner by Kevina Gray;

(3) Akilah Smith's in-court identification of Petitioner was unreliable, depriving Petitioner of his rights to confrontation and a fair trial;

(4) Trial counsel was ineffective in failing to object to Smith's identification; and

(5) Petitioner's rights to due process and fair trial violated when a judgment of

conviction was entered against manifest weight of the evidence. *Berry*, 2019-Ohio-3902, ¶ 10. The Tenth District rejected all five Assignments and affirmed the judgment of the trial court. *Id*. at ¶ 36.

Petitioner filed a timely appeal to the Supreme Court of Ohio, raising the following Propositions of Law:

> (1) Exclusion of venireperson who shared same protected characteristic as Petitioner gave rise to mandatory inference of discrimination under *Batson v. Kentucky*, 476 U.S. 79 (1986);
>
> (2) Trial court's decision to excuse an African-American venireperson whose dismissal was subject to a *Batson* challenge without conducting a *Batson* analysis was clearly erroneous;
>
> (3) Kevina Gray's identification of Petitioner, made only after police interrogation and providing Petitioner's name, cannot be relied upon; and
>
> (4) "The intentionality of suggestive state action is irrelevant to the Due Process analysis under *Manson v. Braithwaite*[.]"

(Petition, ECF No. 1, PageID 16, citing 432 U.S. 98 (1977).) The Supreme Court of Ohio declined jurisdiction on February 4, 2020, and declined reconsideration on the *Batson* issue on April 14, 2020. *State v. Berry*, 158 Ohio St. 3d 1468, 2020-Ohio-1393. Petitioner filed a petition for writ of *certiorari* to the United States Supreme Court, raising one issue: "Does discrimination in jury selection at the intersection of race and gender violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?" (State Court Record, ECF No. 8, PageID 321.) The Supreme Court declined *certiorari* on October 13, 2020. *Berry v. Ohio*, 141 S.Ct. 606 (Mem.) (2020).

While his direct appeal was pending, Petitioner, proceeding *pro se*, filed a postconviction petition to vacate his convictions and sentence. He raised the following claims:

> (1) Trial counsel was ineffective in failing to object to Smith's in-court

4

      identification of Petitioner; and

  (2)  Trial counsel was ineffective in failing to present evidence or allow Petitioner to testify in his own defense.

(State Court Record, ECF No. 8, PageID 368, 371.) The petition, along with the rest of the case, was dismissed without opinion or notation order on February 22, 2021. (*Id*. at PageID 394.) Petitioner did not appeal the dismissal.

## II.    Legal Standards

As Petitioner is imprisoned based on a state court judgment, he may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition "shall not be granted with respect to any claim" that:

> [W]as adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]

28 U.S.C. § 2254(d). A habeas corpus petitioner must also satisfy additional procedural requirements, including but not limited to exhaustion of State court judicial remedies. 28 U.S.C. § 2254(b). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, the Court's review of a claim adjudicated on its merits in a State court proceeding is sharply circumscribed; "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

5

The "unreasonable application" standard is distinct from and more deferential than that of "clear error." "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court decision was erroneous. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75, 76 (2003) (internal quotation marks omitted). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). However, this deferential standard applies only when the state court has addressed the merits of a claim raised on appeal; "[w]here a state court has not adjudicated a claim on the merits, the issue is reviewed *de novo* by a federal court on collateral review." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).

### III. Analysis

#### A. Claims One and Two

In Claim One, Petitioner argues that the Franklin County, Ohio, Court of Common Pleas and Tenth District unreasonably applied *Batson* by ruling that Petitioner's rights to equal protection were not violated by the exclusion of African-American jurors (Petition, ECF No, 1, PageID 16, citing 476 U.S. 79.) In Claim Two, Petitioner argues that the Tenth District erred in affirming the trial court's application of *Batson* "on an unreasonable determination of the facts in light of the evidence presented." (*Id*. at PageID 19.)

The facts alleged are identical for both claims (Petition, ECF No. 1, PageID 19.) Petitioner argues that the prosecution used two of four peremptory challenges to strike African-American venire members. After the prosecution's second strike, of an African-American man, Petitioner's counsel raised a *Batson* challenge. (Trial Tr., ECF No. 8-4, PageID 716.) The prosecutor argued

that, to make a *prima facie* case under *Batson*, Petitioner would have to show a pattern of discrimination, which Petitioner argues was impossible since there was only one African-American man in the venire. (*Id*. at PageID 716, 717.) The trial court concluded that the prosecutor's peremptory strike did not violate *Batson*, despite the prosecutor stating that one of the reasons for the strike was an undisclosed, out-of-court conversation he had with another prosecutor regarding the venireman. (*Id*. at PageID 717.) The prosecutor then used his final peremptory challenge to strike an African-American woman who was to be an alternate juror. Petitioner's counsel renewed his *Batson* challenge, which was overruled, with the trial judge finding that no pattern was established. (*Id*. at PageID 726.)

> On appeal, Petitioner argued in his first assignment of error that:
>
> [T]he State failed to meet its burden at the second step of the *Batson* analysis because its reasons for dismissing Mr. Lawson were not sufficiently clear and the court failed to meet its burden at the third step of the analysis because the unclear, non-specific reasons proffered by the State were pretext for discrimination. Additionally, Mr. Berry asserted that whether a prima facie case existed was a moot issue because the State offered its explanation for the peremptory challenge and the trial court made a final ruling on the matter, consistent with *Hernandez v. New York*.

(Petition, ECF No. 1, PageID 18, citing *Hernandez*, 500 U.S. 352, 359 (1991) (plurality opinion).) The Tenth District rejected Petitioner's mootness argument and concluded that Petitioner had failed to make a *prima facie* case of discrimination, and thus, could not sustain a *Batson* challenge. *Berry*, 2019-Ohio-3902, ¶ 18.

A *Batson* challenge has three elements. *First*, a defendant must make a *prima facie* case of purposeful discrimination. *Batson*, 476 U.S. at 96–97. To satisfy this element, a defendant must show that: (1) he is a member of a cognizable racial group; (2) the prosecutor used a peremptory challenge to strike a venireperson of a particular race; and (3) facts and relevant circumstances lead to plausible inference that the strike was racially motivated. *Powers v. Ohio*,

499 U.S. 400, 416 (1991); *Batson*, 476 U.S. at 97–98; *United States v. McAllister*, 693 F.3d 572, 579–80 (6th Cir. 2012); *United States v. Odeneal*, 517 F.3d 406, 418–19 (6th Cir. 2008). The burden is not onerous, but the defendant must rebut the "great deference" afforded the trial court's observations and findings in *voir dire*. *Hernandez*, 500 U.S. at 364. *Second*, if a *prima facie* showing is made, the prosecutor must make a race-neutral justification for striking the jurors of that particular race. *Batson*, 476 U.S. at 97. The explanation need not be plausible, only facially valid. *Purkett v. Elem,* 514 U.S. 765, 767–68 (1995) (*per curiam*); *United States v. Harris*, 192 F.3d 580, 586 (6th Cir. 1999). *Finally*, the court must determine whether the defendant has proven purposeful discrimination. *Purkett,* 514 U.S. at 768; *Hernandez,* 500 U.S. at 359, 363.) "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id*. The trial judge's decision at the third step is, again, to be accorded a "great deal" of deference. *Hernandez*, 500 U.S. at 364; *Batson*, 476 U.S. at 98 n.21. "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins,* 546 U.S. 333, 338–39 (2006), quoting 28 U.S.C. § 2254(e)(1).

The Tenth District "construe[d] the transcript of the voir dire proceedings to indicate the trial court's determination that Berry failed to establish a prima facie case of discrimination as to the removal of potential juror Lawson and alternate juror Scott." *Berry*, 2019-Ohio-3902, ¶ 18. The court continued:

> [E]ven though the trial court permitted the state to provide an explanation for its dismissal of Lawson, it found no inference of purposeful discrimination and thus denied Berry's *Batson* objections on the preliminary issue of whether he had made a prima facie showing. We agree the record does not support an inference of purposeful discrimination by the state in its peremptory challenges to Lawson and Scott.

*Id*.  Petitioner argues that "the court of appeals' factual determination that the trial court never completed the *Batson* analysis was unreasonable."  (Traverse, ECF No. 16, PageID 1393–94, citing *Berry*, 2019-Ohio-3902, ¶ 18.)  Petitioner is correct in his recitation of the sequence: Petitioner's counsel made the challenge, the prosecutor responded, and the trial judge rejected the challenge (Traverse, ECF No. 16, PageID 1393, citing *Johnson v. Love*, 40 F.3d 658, 665 (3d Cir.1994); *United States v. Perez*, 35 F.3d 632, 635 (1st Cir. 1994); Voir Dire Tr., ECF No. 8-4, PageID 717–19).)  There is no dispute as to the first two elements of step one—that the defendant is a member of a protected racial class, African-American, and that the venireperson subject to the peremptory challenge is also African-American.  *Berry*, 2019-Ohio-3902, ¶ 18.  However, the transcript reflects ambiguity as to the third element:

> THE COURT: Mr. Carter.
>
> MR. CARTER: Your Honor, pursuant to *Batson*, we would ask the prosecutor to show cause beyond Mr. Lawson's race. He's the only male black juror that just got excused.
>
> THE COURT: Mr. Pierson?
>
> MR. PIERSON: Your Honor, I think that there's two steps to this. First of all, they have to establish a pattern; second defense counsel, before I am required to provide a reason and then I provide a reason. There is no pattern here. There are multiple other jurors. Ms. Kash was number one to get excused by me, and then Mr. Lawson. I find it offensive and demeaning to the process that every time a black male is dismissed from a jury a *Batson* challenge is called, as if there is no other reason, for his responses to questions or other reasons.
>
> THE COURT: Okay. We're just making a record here. I don't see a *Batson* problem existing at this point in time, but we're making a record. Any particular reason you removed him other than his answers?
>
> MR. PIERSON: Other than his answers, no. Well, other than slightly his answers in court. His answers to me and also he was downstairs voir dired in another case, and I talked to the prosecutor on that case and got additional information about his answers to that question, those questions. And that came up with the formulation of why I should excuse him.

9

>THE COURT: Okay. Anything else, for the record?
>
>MR. CARTER: Your Honor, obviously we didn't have a chance to address whatever questions that were addressed in Mr. Pierson's office. We weren't present for the voir dire that took place initially. And with respect to the assertion that there has to be a pattern when there is only one male black juror, I'm not sure how we would establish a pattern[.]
>
>THE COURT: Well, I gave you your justification, okay? I can understand. We're just making a record here. I don't think we have a *Batson* issue yet.

(Voir Dire Tr., ECF No. 8-4, PageID 716–18.)

It is unclear the point at which the trial judge overruled the *Batson* challenge as to Lawson. After Petitioner's initial challenge, the trial judge turned to the prosecutor, which suggests that he may have been proceeding to step two, implicitly concluding that Petitioner had satisfied step one. However, the prosecutor did not offer a justification for challenging Lawson at that point; rather, he incorrectly stated Petitioner's burden[1] at step one and expressed frustration that a challenge had been raised at all (Voir Dire Tr., ECF No. 8-4, PageID 716.) At that point, the trial judge concluded that there was no *Batson* issue. (*Id.* at PageID 717.) It was only after the judge made that conclusion that the prosecutor made his race-neutral explanation. (*Id.*) To be sure, the trial judge reiterated his conclusion after the race-neutral explanation was given. (*Id.* at PageID 718). Nonetheless, it is not the role of this Court to weigh independently competing, plausible explanations. In other words, even if this Court were to conclude independently that a full *Batson* analysis was undertaken, that conclusion would have no bearing on the outcome: "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010),

---

[1] Contrary to the prosecutor's argument (Voir Dire Tr., ECF No. 8-4, PageID 716), a pattern of discrimination is not required for a *prima facie* showing at step one of *Batson*. *See, e.g.*, *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008); *Batson*, 476 U.S. at 95; *Drain v. Woods*, 595 F. App'x 558, 570 (6th Cir. 2014).

10

citing *Williams (Terry)* 529 U.S. at 411. Rather, the only way to disturb the conclusion of a state court is by a showing that the decision was "unreasonable." 28 U.S.C. § 2254(d)(2). Petitioner may only do that by rebutting the presumed correctness of the state court's factual findings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to present evidence suggesting that the state court's factual determination was unreasonable, and this Court should not disturb that determination.

Alternatively, Petitioner "also relies on 28 U.S.C. §2254(d)(1) to assert that both the trial court and court of appeals unreasonably and contrarily applied United States Supreme Court case law at the first step of the *Batson* inquiry." (Traverse, ECF No. 16, PageID 1394.) He notes that "the Constitution forbids striking even a single prospective juror for a discriminatory purpose." (*Id.*, quoting *Snyder v. Louisiana*, 555 U.S. 472, 478 (2008).) Despite this clearly established law, the prosecutor argued that Petitioner had to show a pattern of discrimination, an argument the trial court allegedly accepted. (*Id.* at PageID 1395, quoting Voir Dire Tr., ECF No. 8-4, PageID 717, 719, 726.) Petitioner claims that the Tenth District compounded the trial court error in rejecting his "single tainted strike" argument by seemingly basing its affirmation on the fact that Petitioner did not address the presence of African-American women in the venire or whether the two African-Americans struck were the only two African-Americans in the venire. (*Id.* at PageID 1395–96, quoting *Berry*, 2019-Ohio-3902, ¶ 18.) Petitioner argues that the trial and appellate court's analyses were unreasonable applications of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at PageID 1396–97.) Thus, AEDPA deference does not apply, and *de novo* review is appropriate. (*Id.* at PageID 1397.)

The Warden counters that even though pattern evidence is not required for Petitioner to meet his *prima facie* burden, "such evidence is relevant to a *prima facie* showing." (Return of

11

Writ, ECF No. 9, PageID 1359, citing *Batson*, 476 U.S. at 96–97). Indeed, a pattern of strikes against jurors of a particular race can "'give rise to an of interference of discrimination' establishing a *prima facie* case." *Drain v. Woods*, 595 F. App'x 558 (6th Cir. 2014) (quoting *Batson*, 476 U.S. at 97). Moreover, a "wait-and-see" approach by the court is often appropriate to determine whether a pattern emerges. (*Id*., quoting *Sorto*, 497 F.3d at 170; *Rosario v. Ercole*, 582 F. Supp. 2d 541, 555 (S.D.N.Y. 2008).) That is what happened in this case, the Warden argues: "Although Berry failed to demonstrate a *prima facie* case when the prosecutor struck Lawson, the court adopted a 'wait and see' approach to see if a pattern developed. And ultimately, the court concluded that no pattern evidence existed to support an inference of discrimination." (*Id*. at PageID 1360.) In other words, even though pattern evidence is not *the only* reason that a defendant may fail at step one of *Batson*, it is *an acceptable* reason for the trial court to conclude that a defendant had not made a *prima facie* case.

The definition of "unreasonableness" that has emerged since the AEDPA was enacted makes it increasingly difficult for a habeas court to find a state court decision "unreasonable." Regarding 28 U.S.C. § 2254(d)(1)'s "unreasonable application" standard, in *Woods v. Donald*, 575 U.S. 312 (2015) (*per curiam*), the Supreme Court further explained how high a bar 28 U.S.C. § 2254(d)(1) was intended to set. As the Supreme Court expounded:

> AEDPA's standard is intentionally " ' "difficult to meet." ' " *White v. Woodall*, 572 U.S. 415, 419, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358, 133 S.Ct. 1781, 1786, 185 L.Ed.2d 988 (2013)). We have explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U.S., at 419, 134 S.Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id*. (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing

12

> law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

*Woods*, 575 U.S. at 316; *see also McKinney v. Hoffner*, 830 F.3d 363, 370 (6th Cir. 2016), quoting *Harrington*, 562 U.S. at 102–03 ("Habeas review is thus intended to serve only as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitution for ordinary error corrections through appeal.'").

Undoubtedly, the prosecutor misstated the law when he said that Petitioner was required to show a pattern of discrimination at step one prior to the prosecutor being required at step two to provide a race-neutral explanation for the strike (Voir Dire Tr., ECF No. 8-4, PageID 716.) However, there is nothing in the record suggesting that the trial judge relied on the prosecutor's incorrect statement of law in determining that there was not a *Batson* issue with respect to juror Lawson. (*Id*. at PageID 717.) Indeed, the record plausibly suggests that the judge had made up his mind before hearing anything from the prosecutor. Further, while the trial judge did note the lack of a pattern in rejecting the *Batson* challenge as to alternate juror Scott (*id*. at PageID 726), it was not impermissible for him to consider a pattern of strikes (or lack thereof) as evidence for the *prima facie* case. *Drain*, 595 F. App'x at 570. Thus, the trial court's determination that Petitioner had failed to make a *prima facie* case at step one of *Batson* was justifiable and not an unreasonable application of clearly established law. Consequently, the Tenth District's conclusion that "the trial court did not err in finding no inference of purposeful racial discrimination[,]" *Berry*, 2019-Ohio-3902, ¶ 18, was not contrary to clearly established law, and the Court must defer to this decision. Accordingly, Claims One and Two should be dismissed.

**B.     Claim Three**

Petitioner claims that the linchpin of the State of Ohio's case against him was the

13

identification of him by Kevina Gray, both to detectives and in court. He argues that the tactics used by the Detectives Patrick Dorn and Jay L. Fulton to obtain the identification were impermissibly suggestive, in violation of *Braithwaite* (Petition, ECF No. 1, PageID 19, citing 432 U.S. 98.) Petitioner claims that Ms. Gray originally identified Petitioner, without naming him, as someone who had been at the club where the murder occurred on the night in question. However, after detectives informed Ms. Gray that she had identified Petitioner and provided his name, Ms. Gray stated that she was "100 percent sure" that Petitioner had killed Marshaun Gray. (*Id.* at PageID 19– 20.) Petitioner concedes that the initial photograph array was proper, but argues that the follow-up identification of Petitioner by Dorn was "[g]iving such feedback [that] involves the suggestive problems that the United States Supreme Court addressed in *Biggers*[.]" (Traverse, ECF No. 16, PageID 1406–07, quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972).) Consequently, Petitioner claims, Ms. Gray's identifications of Petitioner, both to detectives and in-court, should have been suppressed, and Petitioner's due process rights were violated when they were not. (*Id.* at PageID 1409 n.7.)

> The Tenth District summarized and analyzed as follows:
>
> {¶ 22} Whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the suppression of an eyewitness identification involves a two-step inquiry. *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012). First, the trial court must determine whether the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 38 (10th Dist.), citing *Neil v. Biggers*, 409 U.S. 188 (1972). "'The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state.'" *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 19, quoting *State v. Brown*, 38 Ohio St.3d 305, 310 (1988). Confrontations unnecessarily suggestive of the suspect's guilt are those confrontations "infected by improper police influence" resulting in a "corrupting effect" on the identification process. *Perry* at 232. The impermissibly suggestive inquiry probes whether "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th

Cir.2009).

{¶ 23} Second, if the confrontation procedure was unduly suggestive, then the trial court must determine whether the identification itself was unreliable under the totality of the circumstances. *Id.* The factors that must be considered when evaluating reliability under the totality of the circumstances test are as follows: (1) the witness's opportunity to view the offender at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the offender; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation. *Monford* at ¶ 39, citing *Biggers* at 199-200.

{¶ 24} As to Kevina's out-of-court identification in response to a photo array, Berry argues that Detective Dorn impermissibly suggested his involvement in the shooting by stating his name as the person who Kevina identified as being at the club during the shooting. We disagree. While Kevina's statement naming Berry as the shooter suggested she did not immediately recall the name of the person that she had initially recognized in the picture, she also indicated her independent knowledge of Berry, including his height and build, which are not reflected in the picture. Even though Detective Dorn stated that the person in the picture is Berry, there is no evidence that either Detective Fulton or Detective Dorn "steered" Kevina to Berry as the perpetrator of the crime, independent of her recollection. Kevina had already singled Berry out in the photo array as being at the club on the night of the shooting, and she had already named Berry as someone who may have been involved in the shooting. The timing of Detective Dorn's statement of Berry's name, and Kevina's immediate response to that statement, was pertinent to the credibility of Kevina saying he was the shooter, but not the admissibility. We find that the identification procedure was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Consequently, Kevina's credibility and the weight to give Kevina's out-of-court identification was for the jury to decide based on its consideration of all pertinent facts.

{¶ 25} We also reject Berry's challenge to the in-court identifications. As to defendants identified in the courtroom under suggestive circumstances, the due process rights of those defendants are generally met through the ordinary protections in trial. *Perry* at 244-46. These protections include the right to confront witnesses; the right to representation of counsel, who may expose flaws in identification testimony on cross-examination and closing argument; the right to jury instructions advising use of care in appraising identification testimony; and the requirement of proof beyond a reasonable doubt. *United States v. Hughes*, 562 F.Appx. 393, 398, citing *Perry*. Thus, in the absence of impermissibly suggestive out-of-court identification procedures, "the requirements of due process are satisfied in the ordinary protections of trial." *United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir.2013); *see State v. Stidhum*, 1st Dist. No. C-170319, 2018-

> Ohio-4616, ¶ 39 (rejecting argument that "all first-time, in-court identifications are inherently suggestive and violate due process unless preceded by a successful identification in a nonsuggestive procedure or prescreened by the trial court"). Therefore, in-court identifications, where there has been no prior unlawful or unnecessarily suggestive police conduct, are properly admitted. *See State v. E.T.*, 10th Dist. No. 17AP-828, 2019-Ohio-1204. Because Kevina's out-of-court identification was not the result of an impermissibly suggestive identification procedure, we further find that her in-court identification was not tainted by that procedure.

*Berry*, 2019-Ohio-3902. Petitioner argues that the Tenth District "held Mr. Berry to a much higher standard than that established by United States Supreme Court precedent by requiring proof that the State had engaged in intentional steering." (Petition, ECF No. 1, PageID 20.)

The determination of whether an identification procedure was impermissibly suggestive, such that it violates constitutional due process, is the two-step test accurately set forth by the Tenth District. *Berry*, 2019-Ohio-3902, at ¶¶ 22–23. *First*, the defendant must show impermissible suggestiveness by law enforcement in the identification process. *Second*, the court must look at the totality of the circumstances to determine whether the identification was reliable despite the suggestiveness of the process. *Perry v. New Hampshire*, 565 U.S. 228, 232–33 (2012); *Braithwaite*, 432 U.S. at 114, citing *Biggers*, 409 U.S. at 199–200; *Howard v. Bouchard*, 405 F.3d 459, 469, 472 (6th Cir. 2005); *Ledbetter v. Edwards*, 35 F.3d 1062, 1071 (6th Cir. 1993). At the first step, the court examines whether "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009). At the second step, the court must consider the: (1) opportunity of witness to view suspect at the time of the crime; (2) attention paid by the witness; (3) accuracy of the witness's prior description; (4) level of certainty of witness in identifying the defendant; and (5) length of time between the crime and pretrial identification. *Braithwaite*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199–200; *Ledbetter*, 35 F.3d at 1071.

The Warden notes that the Tenth District's factual findings are entitled to a presumption of correctness (Return of Writ, ECF No. 9, PageID 1366, citing *Berry*, 2019-Ohio-3902, ¶ 3), and argues that the appellate court applied the *Biggers* test. (*Id.* at PageID 1367–68, citing *Berry*, 2019-Ohio-3902, ¶¶ 22–23.) In light of the presumption of correctness, the Warden claims that Petitioner cannot meet his burden at either step of *Biggers*. At step one, Ms. Gray identified Petitioner as having been at the club, stated that she was familiar with his height and build, and that he might have been involved in the shooting before the detectives even mentioned Petitioner's name. While Ms. Gray immediately identified Petitioner as the shooter after being supplied with his name, the Warden claims that that fact goes to the credibility of her identification, not the admissibility (because the detectives did not impermissibly steer Ms. Gray). (*Id.* at PageID 1369, quoting *Berry*, 2019-Ohio-3902, ¶ 24.) Second, the Warden argues, even if there was impermissible steering, the balance of factors at step two, based on Ms. Gray's testimony, favor a finding of reliability: (1) Ms. Gray's identification was made shortly after the shooting; (2) Ms. Gray was confident in her identification; (3) Ms. Gray's repeated negative interactions with the victim, Marshaun Gray, despite having a child with him, meant that she was not a biased witness; (4) her description of the shooter's shirt matched that of another witness; (5) she gave a detailed description of her witnessing the night in question; and (6) Ms. Gray testified that Petitioner apologized to her for killing her child's father (Return of Writ, ECF No. 9, PageID 1370–71, citing Suppression Hearing Tr., ECF No. 8-2, PageID 436, 441, Trial Tr., ECF No. 8-5, PageID 767, 836–37, 851, 879–80.)

Petitioner argues that *de novo* review is required "because the court of appeals did not consider the reliability of Ms. Gray's identification." (Traverse, ECF No. 16, PageID 1407 n.6, citing *Johnson v. Williams*, 568 U.S. 289, 302 (2013); *Murphy v. Ohio*, 551 F.3d 486, 494 (6th

17

Cir. 2009).) Indeed, a fair reading of the Tenth District's opinion reveals that the court exclusively focused on the first step in finding that Detectives Dorn and Fulton did not impermissibly guide Ms. Gray. *Berry*, 2019-Ohio-3902, ¶ 24. Nonetheless, *de novo* review is only appropriate if Petitioner can show that the appellate court's step one interpretation was an unreasonable application of *Biggers* and its progeny. 28 U.S.C. §2254(d)(1).

Petitioner cannot meet this heavy burden. Contrary to Petitioner's argument (Traverse, ECF No. 16, PageID 1405), the word "intentional" is not mentioned anywhere in the *Berry* opinion, and it is not apparent from that opinion that "intentional steering" was the standard against which the detectives' conduct was evaluated. Rather, the Tenth District relied on the facts that Ms. Gray had already identified Petitioner, in a proper photograph array, as someone who was at the club and may have been involved in the shooting prior to being provided with Petitioner's name. The court also found that Ms. Gray had independent familiarity with Petitioner. *Berry*, 2019-Ohio-3902, ¶ 24. Thus, the appellate court concluded that Ms. Gray's identification of Petitioner immediately after being provided with his name went to weight, rather than admissibility. *Id*. As a fair-minded jurist could reach this conclusion, it may not be disturbed, and this portion of Claim Three should be dismissed.

Finally, Petitioner argues that "[b]ecause Ms. Gray's out-of-court identification was both impermissibly suggestive and unreliable, the subsequent in-court identification should also have been suppressed." (Traverse, ECF No. 16, PageID 1409 n.7, citing *Perry*, 565 U.S. 228.) As the undersigned recommends that the out-of-court identification claim should be rejected, and Petitioner offers no other reason why the in-court identification was inappropriate, this portion of Claim Three should be dismissed as well.

18

### IV. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Petition be **DENIED** and the action be **DISMISSED WITH PREJUDICE**. Because reasonable jurists would not disagree with the conclusion that Petitioner has not made a substantial showing of a denial of a constitutional right, it is further **RECOMMENDED** that Petitioner be denied a certificate of appealability and not be permitted to proceed on appeal *in forma pauperis*.

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: July 22, 2022 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE