UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joseph L. Berry,

    Petitioner,

v.

Warden, London Correctional
Institution,

    Respondent.

Case No. 2:21-cv-928

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

Joseph L. Berry ("Petitioner") objects to aspects of the Report and Recommendations ("R&R") issued by the Magistrate Judge in this habeas corpus case. Obj., ECF No. 12. The Court **OVERRULES** Petitioner's objections for the reasons addressed herein.

### I.    PROCEDURAL HISTORY

On December 1, 2015, Petitioner was indicted for aggravated murder and murder for the shooting of Marshaun Gray that occurred at a club in October 2008. *State v. Berry*, 2019 WL 4727585, at *1 (Ohio Ct. App., Sept. 26, 2019) (hereinafter "*Berry*"). The case went to trial in October 2017. *Id.* During voir dire, the prosecutor ("Mr. Pierson") used a peremptory challenge to dismiss the only black male juror ("Lawson"), and defense counsel ("Mr. Carter") objected

pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). *Id.* The trial court overruled the objection. *Id.* The relevant portions of that exchange are as follows:

> MR. CARTER: Your Honor, pursuant to *Batson*, we would ask the prosecutor to show cause beyond Mr. Lawson's race. He's the only male black juror that just got excused.
>
> THE COURT: Mr. Pierson?
>
> MR. PIERSON: Your Honor, I think that there's two steps to this. First of all, they have to establish a pattern; second—defense counsel, before I am required to provide a reason—and then I provide a reason. There is no pattern here. There are multiple other jurors. Ms. Kash was number one to get excused by me, and then Mr. Lawson. I find it offensive and demeaning to the process that every time a black male is dismissed from a jury a *Batson* challenge is called, as if there is no other reason, for his responses to questions or other reasons.
>
> THE COURT: Okay. We're just making a record here. I don't see a *Batson* problem existing at this point in time, but we're making a record. Any particular reason you removed him other than his answers?
>
> MR. PIERSON: Other than his answers, no. Well, other than slightly his answers in court. His answers to me and also he was downstairs voir dired in another case, and I talked to the prosecutor on that case and got additional information about his answers to that question, those questions. And that came up with the formulation of why I should excuse him.
>
> THE COURT: Okay. Anything else, for the record?
>
> MR. CARTER: Your Honor, obviously we didn't have a chance to address whatever questions that were addressed in Mr. Pierson's office. We weren't present for the voir dire that took place initially. And with respect to the assertion that there has to be a pattern when there is only one male black juror, I'm not sure how we would establish a pattern, so—
>
> THE COURT: Well, I gave you your justification, okay? I can understand. We're just making a record here, I don't think we have a *Batson* issue yet.

\* \* \*

> THE COURT: I don't see a problem at this point in time. They are making their objection. They are making their record and we'll see where it goes. You know, it's not like we don't have—there is a shortage of jurors in there, though. And just because he picked one doesn't necessarily mean that we have the issue. Okay? Anything else for the record?
>
> MR. PIERSON: Not from the State.
>
> THE COURT: Let's do it.

Record, ECF No. 8 at PAGEID ## 716–19 (*Batson* italicized throughout). Later, the state used another peremptory challenge to excuse a prospective alternate juror ("Scott"), who apparently was a Black woman. *Berry*, 2019 WL 4727585, at \*1. Defense counsel again raised a *Batson* challenge, which was again overruled. *Id.* The jury found Petitioner guilty of both murder and aggravated murder, and the trial court sentenced Petitioner to life without the possibility of parole. *Id.* at \*2

Petitioner appealed to the Tenth District Court of Appeals and raised five assignments of error. *Id.* His first assignment of error was that the trial court failed to conduct the necessary *Batson* analysis and, instead, relied on improper factors and ignored relevant evidence. *Id.*

In its review of the *Batson* issue, the state appellate court outlined the *Batson* legal framework and explained the facts underlying the assignment of error. *Id.* at \*2–3. Then, it offered the following reasoning:

> We construe the transcript of the voir dire proceedings to indicate the trial court's determination that [Petitioner] failed to establish a prima

> facie case of discrimination as to the removal of potential juror Lawson and alternate juror Scott. That is, even though the trial court permitted the state to provide an explanation for its dismissal of Lawson, it found no inference of purposeful discrimination and thus denied [Petitioner's] *Batson* objections on the preliminary issue of whether he had made a prima facie showing. We agree the record does not support an inference of purposeful discrimination by the state in its peremptory challenges to Lawson and Scott. The record is clear that Lawson is a male African-American. And while Scott's race was not expressly stated in the record, the record strongly suggests she is also African-American. However, the showing that Lawson and Scott are both African-Americans is not, by itself, sufficient to meet the [prima]facie requirement. In objecting to the peremptory challenges at trial, Berry's only reason given was that Lawson was "the only male black juror that just got excused." But that reason did not address the presence of African-American females, and there is no indication in the record as to whether these individuals were the only two African-Americans in the venire. Thus, we conclude the trial court did not err in finding no inference of purposeful racial discrimination. Consequently, [Petitioner's] arguments challenging the state's explanation are moot.

*Berry*, 2019 WL 4727585, at *4 (cleaned up). Based on this reasoning, the state appellate court overruled Petitioner's *Batson* assignment of error. *Id.* at *4.

After the state appellate court rejected all of Petitioner's assignments of error and affirmed the trial court's judgment, Petitioner timely appealed to the Supreme Court of Ohio. Record, ECF No. 8 at PAGEID ## 253–85. The Supreme Court of Ohio declined jurisdiction and declined reconsideration of the *Batson* issue. *See State v. Berry*, 138 N.E.3d 1160 (Table), *reconsideration denied*, 142 N.E.3d 695 (Table) (Ohio 2020). Petitioner filed a writ of certiorari to the Supreme Court of the United States, which that Court declined in October, 2020. *Berry v. Ohio*, 141 S. Ct. 606 (Mem.) (2020). During the pendency of

Petitioner's direct appeal, he filed a postconviction petition, which was dismissed via notation order in 2021. Record, ECF No. 8 at PAGEID ## 366–76; 394.

Petitioner subsequently filed this habeas petition, in which he raises the following grounds for relief:

> (1) The Franklin County, Ohio, Common Pleas Court and Court of Appeals unreasonably and contrarily applied *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) when they ruled that [Petitioner's] right to equal protection was not violated by the exclusion of an African American juror from his panel . . .
>
> (2) The Franklin County, Ohio, Court of Appeals violated [Petitioner's] right to equal protection under law by basing its decision upholding the trial court's denial of a *Batson* challenge on an unreasonable determination of the facts in light of the evidence presented. . .
>
> (3) [Petitioner's] right to due process was violated by the admission of an eyewitness identification rooted in impermissibly suggestive state action, contrary to *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

Pet. 17–21, ECF No. 1 (cleaned up).

## II.     REPORT AND RECOMMENDATION

Pursuant to the Court's General Orders, Magistrate Judge Jolson issued an R&R on Petitioner's Petition. R&R, ECF No. 17. The R&R recommends dismissing Grounds One and Two because Petitioner failed to "present evidence suggesting that the state court's factual determination was unreasonable," and, in the alternative, because the state appellate court's review of the trial court was not contrary to or an unreasonable application of clearly established law. *Id.* at PAGEID ## 1421–23. The R&R also recommends that Ground Three should be dismissed because Petitioner does not demonstrate that the state appellate

court's review of the eyewitness's identification was unreasonable. *Id.* at 6–18. Petitioner has timely objected to the R&R's conclusions as to Grounds One and Two. ECF No. 18.

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b), the Court determines de novo those portions of the R&R that were properly objected to.

### IV. ANALYSIS

As an initial matter, because Petitioner does not object to the portion of the R&R addressing Ground Three, the Court **ADOPTS** that portion of the R&R and **DISMISSES** Ground Three. *See Cole v. Warden of Seneca Cnty. Jail*, No. 3:17-CV-155, 2017 WL 4182299, at *1 (N.D. Ohio Sept. 21, 2017) ("The Federal Magistrates Act requires a district court to conduct a de novo review only of those portions of a Report and Recommendation to which the parties have made an objection." (citing 28 U.S.C. § 636(b)(1))).

Turning to Grounds One and Two (and the related objections), Petitioner argues that the both the state trial court's and state appellate court's rulings were contrary to and an unreasonable application of the *Batson* doctrine. Obj. 2–6, ECF No. 18. Specifically, Petitioner contends the courts violated his constitutional rights by requiring him to establish a pattern of discriminatory peremptory strikes to make a prima facie showing at the first step of the *Batson* inquiry. *Id.* Petitioner argues that the trial court misstated the law for the first prong of a *Batson* challenge when it indicated that Petitioner needed to show a

pattern of discriminatory strikes and that the state appeals court ratified that misstatement of the law. *Id.* In his objection, Petitioner argues that the Magistrate Judge erred by not acknowledging these misstatements and by not granting habeas relief based on the state courts' errors. *Id.*

The Fourteenth Amendment's Equal Protection Clause guards against discriminatory jury selection and "forbids the prosecutor to challenge potential jurors solely on account of their race." *Batson*, 476 U.S. at 89. When evaluating a challenged peremptory strike, the trial court conducts a three-step inquiry as follows:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. [*Batson*,] 476 U.S., at 96–97, 106 S.Ct. 1712. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. *Id.*, at 97–98, 106 S.Ct. 1712. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. *Id.*, at 98, 106 S.Ct. 1712.

*Miller-El v. Cockrell*, 537 U.S. 322, 328–29, (2003). A defendant makes a prima facie showing under *Batson*'s step one by demonstrating each of the following:

> (1) that [the defendant] is a member of a cognizable racial group . . .
>
> (2) that the prosecutor has exercised peremptory challenges to remove from the [jury pool] members of the defendant's race . . . [and]
>
> (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice [of peremptory strikes] to exclude the [potential jurors] from the petit jury on the account of their race.

*United States v. Mahbub*, 818 F.3d 213, 224 (6th Cir. 2016) (quoting *Batson*, 476 U.S. at 96).[1]

Petitioner's arguments as to Grounds One and Two are unavailing. Setting aside any errors with the state trial court's *Batson* analysis, the state appellate court's review of the issue was not unreasonable. The state appellate court spelled out the correct *Batson* framework—including the prima facie case for the first prong of a *Batson* violation. *Berry*, 2019 WL 4727585, at *2. True, the state appellate court said that a pattern of discriminatory peremptory strikes could give rise to an inference of racial discrimination, but that is a correct statement of law. *Id.* Although a defendant is not *required* to show a pattern of discriminatory strikes to make a prima facie showing, he *may* do so. *See Batson*, 476 U.S. at 95, 97 (explaining that "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination," but also instructing that "a consistent pattern of official racial discrimination is not a necessary predicate to a violation of the Equal Protection Clause" (internal quotation marks and citations omitted)). In addition, the state appellate court outlined other means by which a defendant could show discrimination, including the types of questions asked or other comments of the prosecutor. *Berry*, 2019 WL 4727585, at *2 (citing cases). The state appellate court went on to apply this

---

[1] In *Powers v. Ohio*, 499 U.S. 400 (1991), the Supreme Court later "modified the *Batson* prima facie case to allow a defendant to raise a *Batson* violation even if he is not of the same race as the excluded juror." *Mahbub*, 818 F.3d at 224 (internal quotation marks and citations omitted).

standard to the record and, after so doing, determined there was no *Batson* violation because Petitioner had not made a prima facie showing at step one. *Id.* at *2–3.

In the Court's view, the state appellate court's analysis of the *Batson* issue suffers from at least one deficiency: it does not address or correct the trial court's possible misunderstanding of law regarding the necessity of a pattern of discriminatory strikes at step one. *Id.* This deficiency, however, is not grounds for habeas relief. Even if the Court might, in other circumstances, find the state appellate court's failure-to-correct "unreasonable" in the non-habeas meaning of the word, "unreasonable" has a special meaning within the habeas context. As the R&R correctly explained:

> The definition of "unreasonableness" that has emerged since the AEDPA was enacted makes it increasingly difficult for a habeas court to find a state court decision "unreasonable." Regarding 28 U.S.C. § 2254(d)(1)'s "unreasonable application" standard, in *Woods v. Donald*, 575 U.S. 312 (2015) (per curiam), the Supreme Court further explained how high a bar 28 U.S.C. § 2254(d)(1) was intended to set. As the Supreme Court expounded:
>
>> AEDPA's standard is intentionally "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419, [ ] (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358, [ ] ((2013)). We have explained that "'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U.S., at 419, [ ] (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification

> that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, [ ] (2011).
>
> *Woods*, 575 U.S. at 316; *see also McKinney v. Hoffner*, 830 F.3d 363, 370 (6th Cir. 2016), quoting *Harrington*, 562 U.S. at 102–03 ("Habeas review is thus intended to serve only as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitution for ordinary error corrections through appeal.'").

R&R 12–13, ECF No. 17 (internal quotation cleaned up).

In sum, it is somewhat irrelevant that the state trial court may have misunderstood the *Batson* standard in a way that made it more difficult for Petitioner to show a *Batson* violation and likewise irrelevant that the appellate court failed to correct that possible misunderstanding. What matters for this Court's review of a § 2254 petition is that the state courts' reasonings and determinations were not "unreasonable." That is, because neither court's conduct was "so lacking in justification" as to be "beyond any possibility for fairminded disagreement," habeas relief is unavailable. *See Harrington*, 562 U.S. at 103. Accordingly, the Court agrees with the Magistrate Judge's conclusions as set forth in the R&R, and Petitioner's objections are **OVERRULED**.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court now considers whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1).

When a claim has been denied on the merits—as in this case—a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

When a claim has been denied on procedural grounds, a certificate of appealability may issue if the petitioner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

The Court is not persuaded that reasonable jurists would debate the dismissal of this action. The Court therefore **DECLINES** to issue a certificate of appealability.

## VI. CONCLUSION

For these reasons, Petitioner's objections are **OVERRULED**; the R&R is **ADOPTED**. The Clerk is **DIRECTED** to enter judgment for Respondent and close the case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**